**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-21103
(Summary Calendar)
_____


IN THE MATTER OF: GEORGE R. HINSLEY,

                                                    Debtor.

_____

GEORGE R. HINSLEY,

                                                    Appellant,

                              versus

MICHAEL BOUDLOCHE, Trustee,

                                                    Appellee.


_____

Appeal from the United States District Court
For the Southern District of Texas
(91-CV-2316)
_____


September 3, 1997

Before SMITH, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellant-Debtor George Hinsley seeks reversal of a bankruptcy turnover order entered on a motion filed by Appellee-Trustee Mike Boudloche (Trustee) in the Debtor's Chapter 7 bankruptcy proceedings being conducted in district court. This order was based on an earlier, non-bankruptcy turnover order granted in prior litigation in the same court between the Federal Deposit Insurance Corporation (FDIC) and Hinsley. Concluding that Hinsley's action in opposition to the second turnover order —— the one granted in the bankruptcy proceeding in district court —— amounts to nothing more than a delaying tactic, we affirm.

**I**

**FACTS AND PROCEEDINGS**

In May 1992, the district court granted the FDIC, receiver for Western-Bank Westheimer, summary judgment on a promissory note against Hinsley and his partnership. The amount of the judgment was $4,848,798.00, together with prejudgment interest, attorney's fees, costs of Court and post-judgment interest in that pre-petition lawsuit in district court.

The FDIC applied to the district court for post-judgment turnover relief as a collection action, requesting the court to order the debtors to assign specified assets to the FDIC. In July 1995, the district court entered a post-judgment turnover order (the Pre-petition Turnover Order) against Hinsley. This order did a number of things including: 1) finding that a partition

2

agreement between Hinsley and his wife was void as to community debts, making the community assets liable for such debts; 2) requiring an assignment of essentially all the Hinsleys' property, other than certain exempt property, to the FDIC; 3) freezing their assets and placing them under the district court's control; and 4) enjoining Hinsley and his wife from selling, withdrawing, or transferring assets under their control.[1]

A few weeks later, on August 10, 1995, the Debtor filed a Chapter 11 proceeding which was later converted to a Chapter 7 proceeding, and the Trustee was appointed to administer Hinsley's bankruptcy estate. The reference to the bankruptcy court in the Chapter 7 proceeding was subsequently withdrawn by the district court, which announced that it would administer the Debtor's bankruptcy case. The Trustee filed a Motion for Turnover of Assets pursuant to 11 U.S.C. § 542 and other related provisions, requesting that all assets subject to the Pre-petition Turnover Order be turned over to the Trustee. In October 1996 the district court entered such an order (the Bankruptcy Turnover Order) without

---

[1]In August 1996 we dismissed an appeal of this order. Thus it is now final and executory. Albeit moot at this point because of such finality, we note in passing that one Texas appeals court in considering a non-bankruptcy turnover order in the context of a judgment creditor stated that "the proper standard of review in a turnover proceeding is an abuse of discretion." DeVore v. Cent. Bank & Trust, 908 S.W.2d 605, 608 (Tex.App.—Ft. Worth 1995), (citing Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991)); See also Santibanez v. Wier McMahon & Co., 105 F.3d 234, 239 (5th Cir. 1997).

conducting a hearing.  This order was granted by the same judge who had ordered the Pre-petition Turnover Order.  The FDIC suit from which the earlier order had arisen was consolidated with the bankruptcy case, and a notice of appeal was timely filed by Hinsley.

## II

## ANALYSIS

A.  STANDARD OF REVIEW

We review findings of fact by the district court under a clearly erroneous standard.[2]  Conclusions of law are reviewed de novo.[3]  Here the district court, in the bankruptcy proceeding, "after hearing the evidence presented and the argument of Counsel," determined that the Trustee's motion for turnover should be granted.[4]  Regardless of what standard of review we apply, we reach the same conclusion — the Bankruptcy Turnover Order was proper.

B.  PROPRIETY OF THE BANKRUPTCY TURNOVER ORDER

Hinsley argues that the district court erroneously granted the Bankruptcy Turnover Order without clear and convincing evidence as to what property was part of the bankruptcy estate, what is Hinsley's interest as debtor in, and the value of, that property, and whether that property could be turned over by Hinsley.  He

---

[2]Odom v. Frank, 3 F.3d 839, 842 (5th Cir. 1993).

[3]Id.

[4]Order Granting Motion for Turnover of Assets, Boudloche v. Hinsley, (J. Hoyt, U.S. District Court Oct. 1996).

4

further asserts that the district court erred in not addressing his bankruptcy exemptions and in failing to specify whether property he obtained after he filed for bankruptcy was included.

The Trustee maintains that the Bankruptcy Turnover Order is simply a procedural vehicle to enforce the final Pre-petition Turnover Order against Hinsley and to unfreeze the property from the district court's direct control. The Trustee asserts that, as the assets subject to the Pre-petition Turnover Order were determined to be community property and thus liable for community debt, they became property of the bankruptcy estate pursuant to 11 U.S.C. § 541 once Hinsley filed for bankruptcy. This section provides that:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> . . .
>
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is——
>
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, ....[5]

The Trustee contends that he did not seek turnover of exempt properties. He further asserts that even if he had, the alleged failure to recognize Hinsley's exemptions could not have been error

---

[5]11 U.S.C. § 541.

5

given that § 542 requires a debtor to deliver even exempt property to the trustee. Section 542 provides that:

> (a) Except as provided in subsection (c) or (d) of this section, an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . or that the debtor may exempt . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[6]

The Trustee correctly states that under 11 U.S.C. § 521 a debtor is required to surrender all property of the estate to the trustee. The Trustee thus insists, again correctly, that his burden of proving that the property sought for turnover is property of the estate was satisfied by the final judgment obtained in the prior FDIC action, which was eventually consolidated with the bankruptcy proceeding in district court. The Trustee thus contends that Hinsley is impermissibly attempting to relitigate the question of what constitutes property of the estate.

## III

## CONCLUSION

We agree with this contention of the Trustee and with the determination of the district court. Hinsley's claim lacks substance and is clearly nothing more than a delaying action. As the Pre-petition Turnover Order was entered by the same court that has jurisdiction over the bankruptcy action, and as that order was

---

[6]11 U.S.C. § 542.

6

issued only a few weeks prior to Hinsley's filing for bankruptcy, reconsideration of the status of Hinsley's assets as property of the estate was and remains wholly unnecessary; such an exercise was properly precluded by the court. Consequently, the Bankruptcy Turnover Order appealed from in this case is, in all respects, AFFIRMED.